## CRAIG & ux. *v.* KITTREDGE & a.

A father desiring to dispose of his real estate among his four children, being three sons and a daughter, it was agreed that it should be divided in two parts by persons selected as referees, and that one part should be conveyed by the father to the respondents, two of the sons, and one part to the other two. The other son and the daughter then agreed that the part assigned to them should also be divided by the referees, to which the father assented. The divisions were accordingly made by the referees, and there being certain buildings on the part assigned to the son and daughter, one undivided half of the build,

Craig v. Kittredge.

ings was assigned to each. The father then made conveyances of the land to the children, intending to carry out the provisions of the awards, but in the deed to the daughter, one undivided half of the buildings was omitted by mistake. Upon a bill filed by the daughter and her husband, after the death of the father, it was *held* that equity would relieve against the mistake by decreeing the respondents to release to the orators all their interest in one undivided half of the buildings.

In EQUITY. The following case is stated in the bill.

Nehemiah Kittredge of Bedford, had four children, Nehemiah and Leonard the defendants, and John and Mrs. Craig. He desired to dispose of his estate among his children during his life-time, but was unable to divide his real estate in a manner satisfactory to them, and proposed to them to select impartial persons to divide it, and on the twenty-first day of April, 1843, they agreed to the proposal, and John French, Gardner Nevins, Thomas G. Holbrook and Edward Riddle were selected for this purpose. It was agreed that they should divide the real estate into two parts, and assign one part to Nehemiah and Leonard, and the other to John and Mrs. Craig, and the referees divided the estate accordingly.

On the same day, John and Mrs. Craig agreed, with the assent of their father, that the referees should divide the part assigned to them into two portions, one to each of them, which they did, excepting the buildings on the part assigned to John and Mrs. Craig, and the referees reserved to each, one undivided half of the buildings on the premises. The awards were published to the parties, and approved, and the father then determined to make deeds to his children in pursuance of the awards and caused deeds to be written by one of the referees, of the part assigned to Nehemiah and Leonard, and a deed to John and Mrs. Craig each, which was intended and supposed by all to be a deed of the part assigned to her by the last award. The deeds were executed by the father, and delivered to Nevins to be delivered to the grantees on his death. He died about the twenty-fourth of July, 1844.

The deed to Mrs. Craig, by mistake, does not include the undivided half of the buildings assigned by the first award to John

and Mrs. Craig, though it was reserved to her by the second award, and was intended to be conveyed to her, and though the other half of the buildings was left unconveyed contrary to the intent of the grantor, and the mistake was never discovered by him nor by Mrs. Craig until the grantor's death, about the twenty-fourth of July, 1844, and these facts were well know to Nehemiah and Leonard the respondents.

On the twenty-seventh of March, 1845, the orators requested the defendants to release to them all right in the undivided half of the buildings, but they refused to do so.

The bill prays that the defendants may be decreed to release all claim to the undivided half of the buildings, and for general relief.

The answer states that on the twentieth of April, 1843, the children entered into an obligation, conditioned to perform an agreement made among them. The condition was that the referees (naming them) should assign one part of the estate to the defendants, and one part to John and Mrs. Craig, that they should abide the judgment of the referees; if any difficulty should thereafter arise in relation to any division made in the estate, unless the parties should settle it, it should be settled by the referees; and it contained provisions for the death, absence or inability to agree on the part of the referees. The answer then states, that the referees are all living, and that no application has been made to them to determine the difficulty, which is the foundation of the bill.

The answer then sets out the award of the referees, making a division between John and Mrs. Craig, of the part assigned them. It first sets off to John a tract of land by metes and bounds. It then sets off to Mrs. Craig another tract, and states that the referees have assigned to John all the rest of the land, which they had before assigned to him and Mrs. Craig, "reserving one undivided half of all the buildings on said premises, (to) each of said parties."

The answer then alleges that no part of the buildings upon the farm of the father is upon the tracts described by metes and bounds in this award. It denies that the awards were approved

by all the parties, or that the father then decided to make deeds according to the awards, but alleges that he did decide to make a deed to the defendants of the real estate assigned to them by the first award, and to John of all the real estate assigned to him and Mrs. Craig by the first award, except the part described by metes and bounds in the second award, and except one undivided half of the buildings on the farm, and certain land about the buildings, and to Mrs. Craig, the land described by metes and bounds in the second award and therein assigned to John, but not including any part of the buildings, or of the land under and near them. The deeds were read in the presence of all the parties, and the father was asked if they were all right, and he said they were, and executed them. When the deed to Mrs Craig was read, it was understood, by all, that it included no part of the buildings. It was drawn as the father and all of them intended, and the defendants deny that there was any mistake.

While the referees were examining the house and buildings, the father told them he would not convey the house, but would reserve to himself one half of it, and have free access through the whole of it. Before he executed the deeds, and in the hearing of the defendants, he said he would not convey any of the buildings on the farm to Mrs. C., for she had good buildings of her own.

The defendants admit the demand alleged, and refused to convey, because one half of the buildings descended to the heirs, of whom there are two.

A replication was filed, and evidence was taken on both sides. It appeared clearly, from the testimony of the referees, that the land assigned to Mrs. Craig contained buildings, and that the deed to her was intended to convey one undivided half of the buildings, and also that there was a mistake in the deed to her, consisting in an omission to convey such undivided half. The evidence showed that it was the intention of the grantor to con-convey to her one half of the buildings and one half of the land about them. It also appeared that Nehemiah Kittredge said nothing to the referees, at any time, about reserving the buildings, and said nothing about Mrs. Craig's having a good home

of her own; that he heard the awards read, and assented to them, and also the deeds including the deed, to Mrs. Craig. The evidence, on the whole, was quite clear in support of the allegations in the bill.

*Morrison,* and *Daniel Clark,* for the orators.

*Parker,* and *B. F. Emerson,* for the defendants.

GILCHRIST, C. J.    The prayer of this bill is, that the respondents may be decreed to release all claim to one undivided half of the buildings mentioned in the bill, and for general lelief.

All the agreements in this case were by parol.    On the land assigned by the referees to John Kittredge and Mrs. Craig, there were certain buildings.    It was then agreed that this land should be divided into two parts, which was accordingly done; and one part, with one undivided half of the buildings, was assigned to each of them.    When the conveyances were made by the father to the children, with the intention of carrying out the provisions of the award, one undivided half of the buildings was omitted by mistake.    As it was not conveyed by the deed, of course it remained in the grantor, and the legal title to it descended to the respondents jointly with the other heirs at law.

A stronger reason for the interference of a court of equity does not often exist, than is presented by this case.    The first division of the land was made by common consent, and the award of the referees was assented to.    Of course the referees in assigning their share to the respondents, took into consideration the value of the buildings assigned to John and Mrs. Craig, and awarded to the respondents a more valuable portion of the land than they would have done, had it not been for the assignment of the buildings.    But the respondents, not content with receiving an equivalent for the value of the buildings, desire to retain the buildings also, the legal title to one half of which they now hold. If they are permitted to do this, they will have it in their power to do great injustice to the orators, and it would be a satire upon the administration of justice if neither law nor equity were capable of affording a remedy for so great a wrong.

---

Craig *v.* Kittredge.

---

It was held in *Tilton* v. *Tilton*, 9 N. H. Rep., 392, that a court of equity was competent to correct and reform any material mistake in a deed or other written agreement, whether that mistake be the omission or the insertion of a material stipulation, and whether it be made out by parol testimony, or be confirmed by other more cogent proofs. See also, *Bellows* v. *Stone*, 14 N. H. Rep., 201. In the case of *Smith* v. *Greeley*, 14 N. H. Rep., 378, where there was a mistake in the deed of a person deceased, it was held that the court could grant relief on a bill filed against the executors and heirs at law. It was also held, that this was to be done, not by erasures or interlineations, but by a decree, stating the reform required, with such orders for injunction and releases, as might be necessary and proper to carry the decree into effect.

In the present case, the following decree in substance will be entered.

It having been proved that in the deed from Nehemiah Kittredge to Mrs. Craig, there was a mistake by reason of the omission of one undivided half of the buildings, in the description of the real estate, it is considered by the court here, that equity and good conscience require that the deed should be reformed and corrected so that it may include one undivided half of the buildings aforesaid, and that the title which would be conveyed by the deed as thus corrected, be confirmed and established to the orators, so far as may be consistent with the rights of other persons, not parties hereto. And it is ordered and decreed that the respondents be perpetually enjoined from claiming, possessing, conveying, or in any other manner interfering with, the tract so truly described as aforesaid; and for the purpose of enabling each party to be quieted, and to have their several rights appear on the public records, that the respondents execute deeds of release to the orators of one undivided half of the buildings herein before mentioned, in accordance with this decree.